IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MICHAEL LEE YOUNG                                                                                      PLAINTIFF
ADC #151918

V.                              NO: 5:16CV00173 KGB/PSH

ESTELLA BLAND *et al*                                                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

#### I. Relevant facts

Plaintiff Michael Lee Young, an inmate who is currently incarcerated at the Arkansas Department of Correction's (ADC) Cummins Unit, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on June 6, 2016, naming as defendants advanced practice nurse Estella Bland and Correct Care Solutions LLC (CCS). Young, who has a history of skin cancer, asserts he submitted a sick call on February 17, 2014, for suspected skin cancer on his left ear. According to Young, he saw Bland, who told him that she wanted to do a "punch biopsy." The biopsy did not take place. Young

asserts he again brought up the issue of skin cancer in a June 29, 2015, sick call, and was told he would be referred to a provider. Young states he was not referred, and therefore submitted a request for interview on August 3, 2015, stating "I was seen several weeks ago for an sick call about my left ear and the possible skin cancer. I was told that I would be referred to a provider." In response, according to Young, the infirmary staff replied that he was not referred in June 2015, and instructed him to submit a sick call request if he was still having problems. Doc. No. 2, page 5.

Young states he filed a grievance on October 1, 2015, complaining that he had not received a biopsy. He complained that the area on his ear was "very bothersome and painful." Doc. No. 2, page 5. According to his complaint, Young finally had the biopsy on October 12, 2015. *Id.* He claims that the biopsy findings were made a few days later, but he did not receive the results of it until December 9, 2015, after initiating another grievance on November 25, 2015. *Id.* The biopsy findings apparently showed evidence of cancer.

Young states he was referred to the UAMS Oncology/Dermatologist Clinic for a consult on December 29, 2015, where it was recommended he return to "have a lymph node removed for testing." *Id.* Young states that he filed another grievance on January 14, 2016, stating that "[d]ue to the high likelihood that this Melanoma Cancer has spread, due to the time that the tumor is present, should have made the return trip to the ENT Oncology on a priority level. The longer the tumor is present, the higher the chances are that the cancer will become metastatic in nature. It has been over two weeks since the referral has been made. Also, the tumor is changing/growing since the biopsy in October. Please ensure that an appointment is scheduled for sooner than later." *Id.*, pages 5-6.

Young claims he was sent to UAMS on February 4, 2016, and was told he needed one or two

lymph nodes removed, along with a wedge from his ear. He further states that he underwent surgery on February 22, 2016 in which two lymph nodes were removed, along with the ear wedge. *Id.*, page 6. Young asserts "I would like to file a pro-se lawsuit against Estelle Bland/APN and her employer CCS for deliberate indifference for intentionally delaying treatment of the skin cancer on my left ear. The longer the cancer was on my ear, the higher the chances of the cancer spreading putting me at a substantial risk of harm." *Id.* He seeks money damages as well as further testing to rule out the spreading of the skin cancer.

On August 5, 2016, CCS and Bland filed a motion for summary judgment, a statement of facts, and a brief in support. Doc. Nos. 14-16. They claim that Young did not exhaust available administrative remedies before initiating his lawsuit, and it should therefore be dismissed without prejudice. Young filed a response on August 24, 2016. Doc. No. 19. He argues that he initiated several grievances that were not responded to, the infirmary loses or holds on to the grievances, and he was told "by numerous staff" that he could not progress to Step 2 without getting a response to Step 1. Thus, he claims, the infirmary intentionally stops the grievance process by not responding, preventing the filing of a formal grievance. *Id.* Defendants filed a reply on September 16, 2016, and Young filed a response to the reply on October 3, 2016. Doc. Nos. 22 & 23. For the reasons set forth below, the Court recommends that the motion for summary judgment be granted.

## II. Standard of review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S.

317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Bland and CCS argue they are entitled to summary judgment because Young failed to exhaust his administrative remedies before he filed his lawsuit. The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211. The PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 922-923. It merely requires compliance with prison grievance procedures to properly

exhaust. *See id*. at 922-23. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*. at 923-924.

The ADC follows a grievance policy that allows inmates to grieve medical and other issues. Doc. No. 15-1. That policy requires an inmate to file an "Informal Resolution" on a Unit Level Grievance Form within 15 days of an incident if he believes he has been wronged. If the complaint is medical in nature, it is forwarded to the appropriate medical personnel for response. Upon receipt of the grievance form, a medical department representative will "take whatever action is deemed clinically appropriate to fully resolve the problem, document the action taken, or state why no action is necessary or appropriate." Doc. No. 15-1, page 9. Within 3 working days, the medical department representative is required to provide a response to the inmate. *Id.* If the inmate receives no response from the medical department representative or is dissatisfied with the response received within the designated 3 working days, the inmate may proceed to Step 2, the filing of a formal grievance, without completing Step 1, which is the above-described informal process. *Id.*

Once a formal medical grievance is filed, it is to be forwarded within 5 days to the appropriate medical department for investigation and response. The inmate should receive a written response to the grievance, signed by the warden or his designee, within 20 working days. If the inmate does not receive a response within 20 working days, or if the inmate is not satisfied with the response, the inmate has 5 days to appeal to the Deputy Director for Health and Correctional Programs. *Id.*, pages 13-14. Once the Deputy Director responds, the grievance process is exhausted. The grievance policy specifically states that inmates must exhaust administrative remedies **at all levels** of the procedure before filing a federal civil rights lawsuit (emphasis added). *Id.*, page 19.

In support of their claim that Young failed to exhaust his administrative remedies, the defendants have provided a declaration from Shelly Byers, the ADC's Medical Grievance Coordinator. Doc. No. 15-1. According to Byers, "Young had not filed, appealed and thus completed the grievance process with respect to any medical or mental health grievance at the time he filed his complaint." *Id.*, page 2.

In response to the motion for summary judgment, Young has offered no evidence indicating he has fully exhausted any grievance. Instead, he asserts his failure to exhaust should be excused because he was told by "numerous staff" that he could not proceed to step two, a formal grievance, without receiving a response to step one of the grievance process. Young contends that infirmary employees lose or hold grievances, and thereby intentionally prevented him from fully exhausting his grievances.

If defendants prevented Young from exhausting his grievances, he could be excused from the exhaustion requirement. *See Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (remedy prison officials keep inmate from using is not "available" for purposes of 42 U.S.C. § 1997e(a)). The defendants correctly contend in their reply, however, that an inmate who does not receive a response to his grievance in the allotted time may, according to ADC policy, proceed to the next step. The defendants also note that in Young's response, he quoted from the ADC grievance procedure regarding the time in which inmates are to receive a response, indicating he has access to the grievance procedure. Doc. No. 22, page 5. Additionally, they argue that the Inmate Handbook, which is given to every inmate, describes the inmate's ability to proceed with his grievance in the absence of a timely response. *Id.* Relevant portions of the handbook have been provided. Doc. No. 22-2. Thus, say the defendants, Young had access to the grievance procedures in place, and cannot

now claim he was prevented from exhausting as a result of the infirmary "holding" his grievances. Young has not provided any evidence to support that he did not have access to the ADC's grievance policy or to the Inmate Handbook.

As referenced above, Young asserts he was misled by "numerous" but unnamed ADC employees into believing he could not proceed with his grievances until he received a response. Young has not identified any specific ADC employee who misrepresented the grievance policy to him, or the specifics of any such statement. He cannot now create a fact issue by simply stating that unnamed officials misled him. Bland and CCS have offered proof that Young did not exhaust his administrative remedies. Young has failed to counter with proof sufficient to rebut their evidence.

The United States Supreme Court recently reiterated an inmate's obligation to fully exhaust his administrative remedies. *Ross v. Blake*, 136 S.Ct. 1850 (2016). Although the *Ross* Court recognized that unavailable remedies need not be exhausted, it also noted, "we expect that these circumstances will not often arise." *Id.* at 1859. The *Ross* Court explained three circumstances where a remedy may not be available: (1) when the process cannot be completed because it is a dead end and not capable of completion; (2) when there is a legitimate issue with navigating the process because it is so confusing that no reasonable person can use it; and (3) the procedure is not available because the inmate is thwarted through misrepresentation or intimidation. *Id* at 1859-1860. None of the three *Ross* exceptions are present in this case.

No material facts are in dispute. Young did not exhaust his administrative remedies before he filed this lawsuit, and no exceptions apply. Dismissal is therefore mandatory, and Young's complaint should be dismissed. *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003)(exhaustion process must be fully completed prior to filing suit, and, if not, dismissal is "mandatory").

### IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    The defendants' motion for summary judgment be GRANTED, and plaintiff Michael Lee Young's complaint be DISMISSED WITHOUT PREJUDICE.  Doc. No. 14.

2.    The Court additionally certify that an *in forma pauperis* appeal from this order or any judgment entered hereunder, would not be taken in good faith.

DATED this 7th day of November, 2016.

_____
UNITED STATES MAGISTRATE JUDGE